**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Balamurugan Erulandi,** | ) | **CASE NO. 1:26 CV 1086** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **United States Citizenship** | ) | |
| **and Immigration Services,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

## INTRODUCTION

This matter is before the Court upon defendant's Motion to Dismiss Amended Complaint. (Doc. 19.) This case seeks a writ of mandamus. For the reasons that follow, the Motion to Dismiss Amended Complaint is GRANTED.

## FACTS[1]

This case concerns defendant's ongoing adjudication of plaintiff's "T visa." T visas are a form of relief available to victims of human trafficking and their dependents. *See* 8 U.S.C. § 1101(a)(15)(T). Congress created T visas "to combat trafficking in persons, a contemporary manifestation of slavery . . . to ensure just and effective punishment of traffickers, and to protect their victims." 22 U.S.C. § 7101(a). A principal applicant applies for T-1 nonimmigrant status on Form I-

---

[1] For purposes of deciding the pending motion to dismiss, the facts alleged in plaintiff's First Amended and Supplemental Complaint for Relief Under the Administrative Procedure Act and for Writ of Mandamus ("Amended Complaint and Writ") (Doc. 17) are presumed true.

914. Under 8 C.F.R. § 214.211, a T-1 principal applicant may submit an Application for Derivative T Nonimmigrant Status for an eligible family member. Defendant the United States Citizenship and Immigration Services ("USCIS" or "Defendant") determines whether each applicant has established eligibility under the governing statute and regulations. 8 C.F.R. §§ 214.201–214.211.

Congress has limited the total number of aliens who may receive T visas during any fiscal year to 5,000. 8 U.S.C. § 1184(o)(2); 8 C.F.R. § 214.210(a). As a result, USCIS has adopted a "bona fide" determination process for those applications who achieved compliance with initial evidence requirements and successful completion of background checks. After an alien submits an application for T-1 nonimmigrant status, USCIS "will conduct an initial review to determine if the application is a bona fide application for T-1 nonimmigrant status." 8 C.F.R. § 214.11(e). A "bona fide" determination means that USCIS has found the T visa application to be properly filed, complete, and presenting prima facie eligibility. *See id.* § 214.205. An application will be determined to be bona fide if: (i) The application is properly filed and is complete; (ii) The application does not appear to be fraudulent; (iii) The application presents prima facie evidence of each eligibility requirement for T-1 nonimmigrant status; (iv) Biometrics and background checks are complete; and (v) The applicant is (A) Admissible to the United States; or (B) Inadmissible to the United States based on a ground that may be waived [...]. *Id.* § 214.11(e)(1).

Those individuals who receive a "bona fide" determination pursuant to Section 214.205 are placed on a waiting list, with priority on the waiting list based on the date the application was properly filed. *Id.* § 214.210(a)(1). The oldest applications receive the highest priority for processing, and in the next fiscal year. *Id.* A positive bona fide determination also triggers certain legal benefits, including an automatic stay of removal for any applicant with a final order of removal, until an

ultimate decision is reached on the underlying T visa application. *Id.* § 214.205(g); *see also* 8 U.S.C. § 1227(d)(1) (authorizing the Secretary of Homeland Security to grant an administrative stay of removal to an individual whose application for T nonimmigrant status sets forth a "prima facie case for approval," until the application is approved or there is a final administrative denial after exhaustion of administrative appeals.) Federal statutes also grant entitlement to federal benefits to individuals with a bona fide application for T nonimmigrant status. *See* 22 U.S.C. 7105(b)(1)(A) ("[A]n alien who is a victim of a severe form of trafficking in persons . . . shall be eligible for benefits and services under any Federal or State program[.]" ), (b)(1)(C) (defining victim of a severe form of trafficking in persons as a person who is the subject to a certification under subparagraph (E), (E)(i)(II)(aa) (subparagraph (C) refers to someone who "has made a bona fide application for a visa under section 1101(a)(15)(T) of title 8. . .").

Here, *pro se* plaintiff Balamurugan Erulandi ("Plaintiff") is a citizen of India. In the United States, Plaintiff experienced nearly a decade of severe labor exploitation, wage theft, coercion, and immigration-related abuse involving multiple employers over an extended period. Plaintiff reported the conduct to the United States Department of Labor and cooperated with government investigators. Based on these experiences, Plaintiff applied for a T visa by filing Form I-914 with supporting evidence on January 27, 2025. On the same date, Plaintiff submitted the three associated I-914A applications for his spouse and two children. He also filed a Form I-765, Application for Employment Authorization on behalf of himself and his family members.

Plaintiff filed this action on May 10, 2026, seeking a final adjudication of his T visa. His original complaint also requested a bona fide determination in the event a final adjudication could not be achieved by the expiration of his authorized stay on September 19, 2026. In July 2026,

Defendant informed Plaintiff that his application and that of his family members had been deemed "bona fide." Defendant also approved Erulandi's application for employment authorization, as well as his derivatives' applications for employment authorization. The employment authorization is valid through May 2030.

On August 10, 2026, Defendant filed a Motion to Dismiss, contending that the bona fide determinations rendered Plaintiff's claims moot. Plaintiff disagrees. On August 12, 2026, he filed the Amended Complaint and Writ, clarifying that he still believes that he is entitled to an order from this Court compelling a final adjudication on his T visa. Defendant moves to dismiss the Amended Complaint and Writ. Plaintiff opposes the motion. Defendant has filed a reply.

**STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 335 F. App'x 587, 588 (6th Cir. 2009) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). That said, the complaint must set forth "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The Court is not required to accept as true legal conclusions or unwarranted factual inferences. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in [the] complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint that merely offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*

**ANALYSIS**

Plaintiff seeks relief through the Administrative Procedures Act ("APA") and a writ of mandamus. The Court considers each in turn.

**1. Plaintiff's APA Claim**

The APA states that "within a reasonable time . . . each agency shall proceed to conclude a matter presented to it[.]" 5 U.S.C. § 555(b). If not, courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).[2] To state an unreasonable delay claim under the APA, a plaintiff must allege that the agency "failed to take a discrete agency action that it is required to take" and "that the delay was unreasonable." *Abdullaeva v. Garland*, 2023 WL 7221935, at *4 (N.D. Ohio Nov. 2, 223) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, (2004) *and Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023)) (internal quotation marks omitted).[3]

---

[2] Plaintiff argues that this Court has subject-matter jurisdiction. (Doc. 17 ¶¶ 6–10.) Defendant does not challenge this Court's subject-matter jurisdiction.

[3] Plaintiff alleges that Defendant has failed to fulfill its discrete, nondiscretionary duty under 8 C.F.R. 214.204(n) to "issue a decision approving or denying" Plaintiff's visa application. Defendant

In resolving whether an agency action has been unreasonably delayed, the Sixth Circuit has instructed courts to consider the six factors outlined in *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Barrios v. Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451–52 (6th Cir. 2022) (quoting *TRAC*, 750 F.2d at 80 (internal quotation marks and citations omitted)).

After considering the *TRAC* factors, it is clear that Plaintiff has failed to allege a plausible unreasonable delay claim.[4] First, "[c]ourts have consistently found that the government follows a

---

does not contest that it has a duty to approve or deny applications, but contends that nothing requires an adjudication by a certain date and any delay has not been unreasonable. Defendant's motion turns then on whether Plaintiff has alleged an unreasonable delay.

[4] Although the Sixth Circuit has cautioned that "'[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be

'rule of reason' when petitions are processed, by and large, 'in the order they were filed.'" *Queiroz Gomes v. Bondi*, 2026 WL 1815445, at *5 (D. Mass. June 24, 2026) (citing *Durrani v. Bitter*, 2024 WL 4228927, at *4 (D. Mass. Sep. 18, 2024) (quoting *Memon v. Blinken*, 2023 WL 1438396, at *2 (D.D.C. Feb. 1, 2023))). Defendant contends that it processes T visa in the order they are received. To be sure, the governing regulations prevent Defendant from issuing more than 5,000 T visas in any fiscal year. 8 C.F.R. § 214.10(a). If this numerical limit prevents further grants of T visas in any fiscal year, the regulations command Defendant to place applicants who receive a bona fide determination on a waiting list, with priority "based on the date the application was properly filed." *Id.* § 214.10(b). "[T]he oldest applications receiv[e] the highest priority for processing." *Id.* Importantly, the Amended Complaint and Writ does not allege that Defendant is not following its own regulations. *Contra Barrios Garcia*, 25 F.4th at 453 (finding that the plaintiffs' complaint "adequately alleged that no rule of reason govern[ed] the U-visa-adjudication process" by including allegations such as "that 'many U-visa applications were filed after but decided before theirs"; that "USCIS systematically prioritizes later filed petitions over earlier filed petitions for U-status waiting list decisions"; and that "there are later-filed applications that get U-status waiting list decisions ahead of earlier filed

resolved at that stage.'" *Barrios Garcia*, 25 F.4th at 451 (quoting *Gonzalezv. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)), the Sixth Circuit did not "foreclose" courts from finding that a plaintiff has failed to allege an unreasonable delay as a matter of law. (*See* Doc. 20, at 2.) Nothing in the Sixth Circuit's *Barrios Garcia* opinion relieved plaintiffs of their fundamental obligation to plead enough facts to state a claim to relief that is plausible on its face. *See, e.g.*, *Abdullaeva*, 2023 WL 7221935, at *4–6 (acknowledging *Barrios Garcia* but concluding that the APA claim failed to set forth a plausible claim for relief under *Iqbal* and *Twombly*). Accordingly, courts in the Sixth Circuit, including *Barrios Garcia*, consider the TRAC factors at the motion to dismiss posture to determine whether Plaintiff has alleged a plausible claim under the APA for an unreasonable delay. *See, e.g.*, 25 F.4th at 451–52.

applications.”). In fact, although Plaintiff relies heavily on *Barrios Garcia* in his Opposition, he concedes that the central allegations in that case were different. (Doc. 20, at 6 (acknowledging as a “distinction” that *Barrios Garcia* involved allegations that “later-filed applications had moved first”).)

Further, public records illustrate that “[i]n 2023, USCIS received over 13,000 new T visa applications; this increased to more than 23,000 in 2024 and over 55,000 in 2025.” (Doc. 19-1, at 4–5 (citing USCIS, “Number of Form I-914, Applications for T Nonimmigrant Status, By Fiscal Year, Quarter, and Case Status: Fiscal Year 2026, Quarter Two,” available at: https://www.uscis.gov/sites/default/files/document/data/i914t_visastatistics_fy2026_q2_v1.xlsx.).[5]) In fiscal year 2025, the median processing time for T visa applications was 20.8 months. *Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms by Fiscal Year*, U.S. Citizenship and Immigr. Servs., https://egov.uscis.gov/processing-times/historic-pt. By 2026, the median time increased to 28.6 months. *Id.* Currently, eighty percent of such applications are adjudicated within 34 months. *Case Processing Times*, U.S. Citizenship and Immigr. Servs., https://egov.uscis.gov/processing-times. Here, Plaintiff’s application has been pending for 21 months—around the median and well below the current timeframe for eighty percent of applicants.[6]

---

[5] “[A] court may, in undertaking a 12(b)(6) analysis, take judicial notice of ‘matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.’” *Elec. Merchant Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) (quoting *Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 617 (6th Cir. 2021)).

[6] In *Barrios Garcia*, the Sixth Circuit noted the average processing times for the at-issue visas, but found the timeframe alone was insufficient to overcome the plaintiffs’ allegations that otherwise established an unreasonable delay. Here, the Amended Complaint and Writ is devoid of similar allegations establishing unreasonable delay.

Taken together, the first factor weighs against finding that Plaintiff has alleged an unreasonable delay claim.

As to the second factor, the Sixth Circuit has indicated that "when no statute sets a deadline for an agency action, the second *TRAC* factor is not relevant to an 'unreasonably delayed' analysis." *Barrios Garcia*, 25 F.4th at 454. Instead, in such a scenario, the Sixth Circuit looked to 8 U.S.C. § 1571(b)'s statement that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." "So even though an 'unreasonably delayed' analysis does not rise and fall on a statutory deadline, we are mindful that Congress has expressed that immigration-benefit applications should be adjudicated within six months." *Barrios Garcia*, 25 F.4th at 454. Here, Plaintiff's T visa application has been pending for 21 months. Following this Sixth Circuit guidance, the second factor weighs in favor of finding that Plaintiff has alleged an unreasonable delay claim.

The third and fifth factors are ordinarily assessed together and relate to the "interests prejudiced by the delay," including the "impact on human health and welfare and economic harm." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005); *see also Barrios*, 25 F.4th at

---

Further, this Court is mindful of the Sixth Circuit's hesitancy to rely on an agency's own timeframe to establish what is considered an unreasonable delay. *Barrios Garcia*, 25 F.4th at 454 ("Nor are we persuaded that USCIS's release of its average U-visa-application processing time should prompt us to decide that Plaintiffs' years-long wait is reasonable. The average adjudication time says little about the unreasonableness of USCIS's delay in Plaintiffs' case; this number also does not alter how most (if not all) U-visa adjudications might be unreasonably delayed."). But the Sixth Circuit did not address the significance of a statutory cap on USCIS's reported wait times. Common sense dictates that if USCIS receives 55,000 applications a year but can only issue T visas to 5,000 of those applicants, then a significant number of applicants may experience some delay from the statute-created backlog. Further, this backlog will naturally compound overtime.

452 (analyzing the third and fifth factors together). Plaintiff concedes that he and his family have received a bona fide determination, deferred action, and employment authorization. (Doc. No. 17 ¶ 36.) The employment authorization is valid through May of 2030. (*Id.*) Plaintiff is able to obtain employment, benefit from deferred action, and is entitled to an automatic stay of any final order of removal pending final adjudication of his T visa application. He is also entitled to federal benefits. *See* 22 U.S.C. § 7105(b)(1)(A). Plaintiff acknowledges that the bona fide determination, deferred action, and employment authorization "materially reduce immediate hardship." (*Id.* ¶ 48.) Nevertheless, Plaintiff alleges that "the absence of final decisions . . . causes continuing legal and practical uncertainty" concerning his "long-term immigration future." (*Id.* ¶¶ 49-50.) This alleged general uncertainty stands in stark contrast to the plaintiffs in *Barrios Garcia* who had not received a bona fide determination and alleged specific prejudice that the defendant's delay had on their health and welfare. There, the Sixth Circuit found these factors weighed in their favor because those plaintiffs had alleged they "[could not] obtain a social-security number or identification cards; they [could not] garner healthcare, car insurance, or lawful employment. Plaintiffs [could not] acquire deferred action or permanent status; they risk[ed] removal from the United States." *Barrios*, 25 F.4th at 452. To be sure, other courts weighing this factor in favor of plaintiffs noted similar specific and immediate prejudice to their health and welfare. *See, e.g.*, *Queiroz Gomes*, 2026 WL 1815445, at *5 (finding that plaintiffs alleged plausibility of their immediate removal absent bona fide determinations or adjudicated visas). Accordingly, the third and fifth factors weigh against finding that Plaintiff has alleged an unreasonable delay claim.

The fourth factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Courts have generally "declined

to move plaintiffs to 'the head of the queue' because doing so would 'simply move[ ] all others back one space and produce[ ] no net gain.'" *Durrani*, 2024 WL 4228927, at *5 (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). Here, moving Plaintiff to the "'front of the line' would come at the expense of others who shoulder equally taxing burdens." *Akter v. Rubio*, 805 F. Supp. 3d 37, 47 (D.D.C. 2025) (quoting *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 (D.D.C. 2021)); *Hussein v. Beecroft*, 782 F. App'x 437, 444 (6th Cir. 2019) ("And plaintiffs cannot jump the line by simply requesting mandamus or other relief.") (citing *Mashpee Wampanoag*, 336 F.3d at 1100). Importantly, Plaintiff does not allege otherwise. Thus, the fourth factor weighs against finding that Plaintiff has alleged an unreasonable delay claim.

Finally, both parties acknowledge that the sixth factor is neutral because Plaintiff does not allege any bad faith or impropriety on the part of the government. *See Queiroz Gomes*, 2026 WL 1815445, at *6 (citing *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021)).

In the end, only the second factor weighs in favor of finding that Plaintiff has sufficiently alleged an unreasonable delay claim. But, as the Sixth Circuit has noted, an unreasonably delay analysis "does not rise and fall" on that factor. *Barrios Garcia*, 25 F.4th at 454. And the Supreme Court has indicated that the passage of time alone cannot establish unreasonable delay. *See INS v. Miranda*, 459 U.S. 14, 18 (1982). Accordingly, this Court finds that Plaintiff has failed to plead a plausible unreasonable delay claim.[7]

---

[7] The Court notes that Plaintiff seems confused as to how his own pleading obligations dictate this result under Rule 12(b)(6). In his opposition, he repeatedly cites *Barrios Garcia* and suggests that this Court cannot dismiss his case unless and until Defendant conclusively establishes that it is applying its represented visa adjudication process to his application. But it is Plaintiff's obligation to first allege that it is not happening. As explained above, his failure to include any such allegations materially distinguishes his complaint from the complaints in *Barrios Garcia*. In the

This finding is compounded by the comparatively short delay that Plaintiff has experienced compared to plaintiffs who sufficiently alleged an unreasonable delay. *See Sarlak v. Pompeo*, 2020 WL 3082018, *6 (D.D.C. June 10, 2020) (noting that, while "[n]o bright lines have been drawn . . . [d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable" (internal quotation marks and citations omitted)). To be sure, the plaintiffs in *Barrios Garcia* experienced a five-year delay in the adjudication of their visa applications. 25 F.4th at 452.

For all the aforementioned reasons, Defendant's motion is GRANTED as to Plaintiff's APA claim.

**2. Plaintiff's Claim for a Writ of Mandamus**

Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal quotation marks and citation omitted). Because the writ of mandamus "is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue." *Id.* (internal quotation marks and citations omitted). A petitioner must (1) have no other adequate means to attain the relief she seeks, (2) show a clear and indisputable right to the relief sought, and (3) show that the relief is appropriate under the circumstances. *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 525-26 (6th Cir. 2022).

---

absence of plausible factual allegations, courts do not nevertheless assume that a plaintiff possesses a valid claim and require the defendant to prove otherwise. In the absence of plausible factual allegations, courts properly dismiss the case on a Rule 12(b)(6) motion.

Plaintiff fails to plead a plausible claim that satisfies the second element. As just discussed, he has failed to allege that he is entitled to any expedited adjudication of his application because he has not alleged any present unreasonable delay. *See Kobaivanova v. Hansen*, 2011 WL 4401687, at *7 (N.D. Ohio Sept. 16, 2011). Accordingly, Defendant's motion is GRANTED as to Plaintiff's mandamus petition.

**CONCLUSION**

For all the aforementioned reasons, Defendant's Motion to Dismiss First Amended Complaint is GRANTED and this case is DISMISSED.

IT IS SO ORDERED.

PATRICIA A. GAUGHAN
United States District Judge

Date: 11/2/2026